FILED

2018 Jan-31  PM 04:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

Staples v. HWE, RMFS, Simmons

In the United States District Court

Northern District of Alabama

Western Division

Exhibit 2

## EMPLOYMENT AND CONFIDENTIALITY AGREEMENT

This is an Agreement by and between DSM SALES AND MARKETING, LLC, a Delaware limited liability company with its principal office in Georgia (the "Company"), and _____ ("Employee"), effective as of _____, 2016 (the "Effective Date").

### RECITALS:

**A.** Employee shall be employed by Company, in accordance with the terms of this Agreement.

NOW, THEREFORE, in consideration of the premises hereof, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged to be sufficient, legal, and binding consideration, the parties hereto agree as follows:

**1. EMPLOYMENT.**

(a) <u>Agreement to Employ</u>. Upon the terms and subject to the conditions of this Agreement, Company hereby employs Employee and Employee hereby agrees to be employed by Company. Employee shall be an employee at will and either Employee or Company may terminate Employee's employment at any time with or without cause. The period during which Employee is employed by Company is referred to as the "Employment Period."

(b) <u>Position and Duties</u>. During the Employment Period, Employee shall have the duties, responsibilities and obligations described in Exhibit A, attached hereto and made a part hereof. Employee shall devote full time to the services required of Employee hereunder, except for vacation time and reasonable periods of absence due to sickness, personal injury or other disability, and shall use his/her best efforts, judgment, skill and energy to perform such services in a manner consonant with the duties of Employee's position and to improve and advance the business and interests of Company. In performing his/her duties and responsibilities, Employee shall comply with Company's policies and procedures as implemented from time to time.

(c) <u>No Conflicts of Interest</u>.

(i) . Employee agrees that he/she will conduct all duties as described herein or as otherwise directed by Company and will, at all times, maintain the highest professional standards in representing the interests of Company. Employee further agrees that any direct or indirect interest in, connection with, or benefit from any outside activities, particularly commercial activities, which might in any way adversely affect Company, involves a possible conflict of interest.

(ii) Employee agrees that he/she shall not become involved in a conflict of interest with Company, or upon discovery thereof, allow such a conflict to continue. Employee further agrees that he/she will not, directly or indirectly, seek or accept any fees (including any type of "referral fee"), compensation, or other remuneration from, or with respect to any vendor, supplier, broker, distributor or customer of Company without the prior written consent of Company's chief executive officer or Board of Managers.

(iii)    Employee must disclose in writing to Company's chief executive officer any financial interest held, directly or indirectly, by Employee or Employee's spouse or children in any entity with which Company has a transaction or arrangement.  A "financial interest" includes an ownership or investment interest (or potential an ownership or investment interest) or a compensation arrangement or potential compensation arrangement.

(d)    Compensation.    During the Employment Period, Company shall pay Employee a base salary ("Base Annual Salary") as set forth in Exhibit A.  Employee's Base Annual Salary may be adjusted from time to time as determined by Company, in its sole discretion.  Any payments provided for in the Agreement shall be subject to applicable Federal, state or local income or employment tax laws or similar statutes or other provisions of law then in effect.  Employee acknowledges that Company shall have no liability for any obligations (including, without limitation, compensation or benefits) owed to Employee by Employee's prior employer(s).

(e)    Bonus and Benefit Programs.    Employee shall also be entitled to participate in such bonus and/or benefit programs (including health insurance, vacation and sick leave programs) as Company may, from time to time, make available to its employees, on the terms and conditions of such programs.  Nothing in this Agreement shall require Company to establish or maintain any particular bonus or benefit program nor prevent Company from terminating or amending or adding bonus or benefit programs.  Employee acknowledges that Company does not currently provide any such health insurance coverage and it is Employee's sole responsibility to secure health insurance coverage for Employee and Employee's dependents (and Company has no liability to Employee for his failure or inability to secure any such health insurance coverage, for whatever reason).

(f)    Business Expenses.    Subject to approval by Company and the provision by Employee to Company of satisfactory supporting documentation, Company shall, in accordance with its policies, pay or reimburse the Employee for reasonable business expenses incurred by the Employee during the Employment Period in connection with his employment hereunder.

2.    NONDISCLOSURE    AND    NONUSE    OF    CONFIDENTIAL INFORMATION.    Employee acknowledges that Company obtains or develops certain Confidential Information and Trade Secrets (as defined below) in the ordinary course of its business and that Employee may learn of, or have access to, such Confidential Information and Trade Secrets during the course of Employee's employment with Company.  This Section 2 will survive the termination, for any reason, of this Agreement.

(a)    Definitions.    For the purposes of this Section, the term "Confidential Information" shall include, without limitation, any information pertaining to Company's customers, prospective customers, strategic partners and prospective strategic partners, know-how, forms, inventions, software, designs, processes, accounts, business or financial information, marketing information and strategies, pricing, supplier lists and pricing, techniques, methods, databases, business policy information, reports, lists, correspondence, computer disks, or any other information which is, or could be construed as, confidential in nature.  Notwithstanding the foregoing, "Confidential Information" will not include information which (a) is public knowledge or becomes generally available to the public other than as a result of a disclosure by Employee; or (b) becomes available to Employee, on a non-confidential basis, from a source (other than from

Company or its agents) who is not bound by a confidentiality agreement with Company; or (c) is readily discoverable using non-confidential information. The term "Trade Secret" shall mean any data or information, in whatever form or format, constituting a Trade Secret under applicable law. In addition to all other remedies provided by law or in equity, Employee agrees and consents that Company shall be entitled to both preliminary and permanent injunctive relief to prevent a breach or contemplated breach by Employee of the covenants contained herein. The term "Applicable Post-termination Period" shall mean (y) with respect to Confidential Information, three (3) years after the termination of Employee's employment with Company, and (z) with respect to Trade Secrets, for as long as such information or data constitutes a Trade Secret.

(b)     Protection of Confidential Information.  During the Employment Period, and for the Applicable Post-termination Period, Employee agrees not to divulge or disclose any Confidential Information or Trade Secrets of Company unless the information is required to be disclosed by law, court order or administrative regulation.

(c)     No Proprietary Right/Nonuse.  Employee hereby agrees that any Confidential Information or Trade Secret is and shall remain the sole and exclusive property of Company for use in Company's business and shall be used solely in connection with Employee's employment with Company and shall not be used by Employee, directly or indirectly, in any other manner whatsoever.   Under no circumstances whatsoever shall Employee have any proprietary or other legal right to the Confidential Information or Trade Secrets during, or subsequent to the termination or cessation of, Employee's employment with Company.

(d)     Return of Documents; Property.  Upon termination or cessation of Employee's employment with Company, regardless of the reason for such termination or cessation, Employee agrees to promptly return to Company all property belonging to Company.  "Property" includes, without limitation, documents or other written material belonging to Company, all copies of documents or other written material belonging to Company, laptops, tablets (e.g. iPads and similar devices), written or graphic records (in any media including electronic, audio or video), any electronic media containing information about or documents or other written material belonging to Company.

3.     **CREATIONS BELONG TO COMPANY.**  Employee agrees that (a) all works of any nature created by Employee or under Company's direction in connection with Company's business, including, without limitation, manuals, marketing materials, analyses and reports, whether or not copyrightable or patentable are "works made for hire" and shall be the sole and complete property of Company; (b) any and all copyrights or patents to such works shall belong to Company; and (c) Employee shall execute all documents that may be necessary to convey or assign to Company any rights he or she may have in such works.  To the extent any such works are not deemed to be "works made for hire," Employee, by virtue of the execution of this Agreement, hereby assigns all proprietary rights, including copyright, in these works to Company without further compensation.  This Section 3 will survive the termination, for any reason, of this Agreement.

4.     **NON-SOLICITATION.**

(a)     Restrictions.  For the period beginning on the Effective Date through and including the second anniversary of the date of the termination of Employee's employment with Company (the "Restricted Period"), Employee shall not, directly or indirectly, as an individual or

Staples0004

on behalf of a firm, corporation, partnership or other legal entity, except on behalf of and for the benefit of Company (i) solicit any customers of Company with which Employee had material contacts while an employee of Company, including, without limitation, those customers with which Company has contracts to sell products for the purpose of selling any beef, pork or chicken products or any other products sold by Company during the term of employment, or (ii) take any action that would interfere with, diminish or impair the valuable relationships that Company or its affiliates has with its customers, third party suppliers or vendors (with which Employee had material contacts while an employee of Company). The Restricted Period shall be tolled and extended for any period(s) during which the enforcement of the covenants is being litigated or arbitrated, including any appeal or confirmation proceedings, provided that the outcome of such litigation or arbitration is to enforce, in whole or in part, such covenants.

(b)     Remedies.     Employee has carefully read and considered the provisions of this Section 4, and having done so, agrees that the restrictions set forth in this Section 4 (including the Restricted Period) are fair and reasonable and are reasonably required for the protection of the interests of Company. Without limiting other possible remedies available to Company, Employee agrees that injunctive or other equitable relief from a court of competent jurisdiction or an arbitrator shall be available to enforce the covenants set forth in this Section 4, such relief to be without the necessity of posting a bond. In the event that, notwithstanding the foregoing, any part of the covenants set forth in this Section 4 shall be held to be invalid, overbroad, or unenforceable by an arbitration panel or a court of competent jurisdiction, the parties hereto agree that such invalid, overbroad, or unenforceable provision(s) may be modified or severed from this Agreement without, in any manner, affecting the remaining portions hereof (all of which shall remain in full force and effect). In the event that any provision of this Section 4 related to the Restricted Period shall be declared by an arbitration panel or a court of competent jurisdiction to exceed the maximum time period or activities such arbitration panel or court deems reasonable and enforceable, said Restricted Period shall be deemed modified to the minimum extent necessary to make the temporal restrictions or activities reasonable and enforceable.

5.     AGREEMENT READ, UNDERSTOOD AND FAIR. Employee has carefully read and considered all provisions of this Agreement and agrees that all of the restrictions set forth are fair and reasonable and are reasonably required for the protection of the interests of Company. Employee acknowledges that he/she had an opportunity to consult with legal counsel concerning this Agreement prior to his execution hereof.

6.     MISCELLANEOUS.

(a)     Assignment. Neither this Agreement nor any of the rights or obligations hereunder shall be assigned or delegated by Employee without the prior written consent of Company.

(b)     Entire Agreement; Amendment. This Agreement supersedes any and all prior agreements between the parties hereto, and constitutes the entire agreement between the parties hereto with respect to the matters referred to herein, and no other agreement, oral or otherwise, shall be binding between the parties unless it is in writing and signed by the party against whom enforcement is sought. This Agreement may not be altered, modified or amended except by a written instrument signed by each of the parties hereto. The paragraph headings contained in this Agreement are for convenience only and shall not be construed as a part of this Agreement.

(c)     Severability; Reformation. In the event that one or more of the provisions of this Agreement shall become invalid, illegal or unenforceable in any respect, the validity, legality

Staples0005

and enforceability of the remaining provisions contained herein shall not be affected thereby. In the event any provision of Section 2 or Section 4 is not enforceable in accordance with its terms, the Employee and Company agree that such Section, or such portion of such Section, shall be reformed to make it enforceable in a manner which provides Company the maximum rights permitted under applicable law.

(d)      Waiver.  Waiver by either party hereto of any breach or default by the other party of any of the terms of this Agreement shall not operate as a waiver of any other breach or default, whether similar to or different from the breach or default waived.

(e)      Counterparts; Facsimile.  This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Any executed copy of this Agreement transmitted by facsimile or e-mail shall be treated as an original signature for all purposes.

(f)      Governing Law; Jurisdiction.  This Agreement shall be governed by the laws of the State of Georgia, without reference to principles of conflicts or choice of law under which the law of any other jurisdiction would apply.  Each party hereby consents to the exclusive jurisdiction of the federal and state courts located in Atlanta, Georgia in any action on a claim arising out of, under or in connection with this Agreement.

(g)      Offset.  Whenever Company is to pay any sum to Employee (including, without limitation, salary and commission), any amounts that Employee owes to Company may be deducted from that sum (including, without limitation, salary and commission) before payment, after written notice to Employee.

(h)      Notices.  Any and all notices required or permitted to be given under this Agreement will be sufficient if furnished in writing, and sent by hand delivery, or by registered or certified mail, Facsimile (during normal business hours) or overnight delivery (i) in case of Employee, to his last known residence or (ii) in case of Company, to its principal office in Savannah, Georgia (with a copy to John Staples in Alabama).

(i)      Representation and Warranty.  There is no prohibition, limitation or restriction against Employee, including but not limited to any covenant not to compete or any covenant not to solicit customers, which would prohibit, limit, restrict or adversely affect Employee's ability to enter into this Agreement or to perform the duties and obligations contemplated hereby.

**[SIGNATURES ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, this Employment and Confidentiality Agreement is executed and delivered by the parties as of the Effective Date.

"EMPLOYEE"

CHRISTOPHER TUPPER _____ (SEAL)

Address: ~~[redacted]~~

"COMPANY"

DSM SALES AND MARKETING, LLC

By: _____

Name: _____

Title: _____

6

## EXHIBIT A

**Position:** _____ Responsibilities will include such duties as assigned to Employee, from time to time, by Company's Chief Executive Officer or General Manager. Employee understands and acknowledges that key duties hereunder include, without limitation, increasing the level of sales of Company's products to the Applicable Customers (defined below) from the current level of sales.

**Base Annual Salary:** During the Employment Period, Company will pay Employee an aggregate Base Annual Salary in the amount of _____ AND NO/100 DOLLARS ($_____) per annum, payable in installments in accordance with Company's normal payroll procedures. Base Annual Salary determined for a period of less than a full year shall be pro rated to reflect such shorter period.

**Additional Amounts:** During the Employment Period, Company will pay to Employee the sum of _____ Dollars ($_____) per month as partial payment for Employee to secure personal health insurance coverage. Employee acknowledges that Company does not provide any such health insurance coverage and it is Employee's sole responsibility to secure health insurance coverage for Employee and Employee's dependents (and Company has no liability to Employee for his failure or inability to secure any such health insurance coverage, for whatever reason).

Staples0008

# EMPLOYMENT AND CONFIDENTIALITY AGREEMENT

This is an Agreement by and between DSM SALES AND MARKETING, LLC, a Delaware limited liability company with its principal office in Georgia (the "Company"), and Barbara Humphrey ("Employee"), effective as of *June 2, 2017* , 2016 (the "Effective Date").

## RECITALS:

**A.**     Employee shall be employed by Company, in accordance with the terms of this Agreement.

NOW, THEREFORE, in consideration of the premises hereof, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged to be sufficient, legal, and binding consideration, the parties hereto agree as follows:

**1.     EMPLOYMENT.**

(a)     _Agreement to Employ._ Upon the terms and subject to the conditions of this Agreement, Company hereby employs Employee and Employee hereby agrees to be employed by Company. Employee shall be an employee at will and either Employee or Company may terminate Employee's employment at any time with or without cause. The period during which Employee is employed by Company is referred to as the "Employment Period."

(b)     _Position and Duties._ During the Employment Period, Employee shall have the duties, responsibilities and obligations described in Exhibit A, attached hereto and made a part hereof. Employee shall devote full time to the services required of Employee hereunder, except for vacation time and reasonable periods of absence due to sickness, personal injury or other disability, and shall use his/her best efforts, judgment, skill and energy to perform such services in a manner consonant with the duties of Employee's position and to improve and advance the business and interests of Company. In performing his/her duties and responsibilities, Employee shall comply with Company's policies and procedures as implemented from time to time.

(c)     _No Conflicts of Interest._

(i)     Employee agrees that he/she will conduct all duties as described herein or as otherwise directed by Company and will, at all times, maintain the highest professional standards in representing the interests of Company. Employee further agrees that any direct or indirect interest in, connection with, or benefit from any outside activities, particularly commercial activities, which might in any way adversely affect Company, involves a possible conflict of interest.

(ii)     Employee agrees that he/she shall not become involved in a conflict of interest with Company, or upon discovery thereof, allow such a conflict to continue. Employee further agrees that he/she will not, directly or indirectly, seek or accept any fees (including any type of "referral fee"), compensation, or other remuneration from, or with respect to any vendor, supplier, broker, distributor or customer of Company without the prior written consent of Company's chief executive officer or Board of Managers.

ATL 21487119v2

Staples0009

(iii)    Employee must disclose in writing to Company's chief executive officer any financial interest held, directly or indirectly, by Employee or Employee's spouse or children in any entity with which Company has a transaction or arrangement. A "financial interest" includes an ownership or investment interest (or potential an ownership or investment interest) or a compensation arrangement or potential compensation arrangement.

(d)    Compensation.  During the Employment Period, Company shall pay Employee a base salary ("Base Annual Salary") as set forth in Exhibit A. Employee's Base Annual Salary may be adjusted from time to time as determined by Company, in its sole discretion. Any payments provided for in the Agreement shall be subject to applicable Federal, state or local income or employment tax laws or similar statutes or other provisions of law then in effect. Employee acknowledges that Company shall have no liability for any obligations (including, without limitation, compensation or benefits) owed to Employee by Employee's prior employer(s).

(e)    Bonus and Benefit Programs.    Employee shall also be entitled to participate in such bonus and/or benefit programs (including health insurance, vacation and sick leave programs) as Company may, from time to time, make available to its employees, on the terms and conditions of such programs. Nothing in this Agreement shall require Company to establish or maintain any particular bonus or benefit program nor prevent Company from terminating or amending or adding bonus or benefit programs. Employee acknowledges that Company does not currently provide any such health insurance coverage and it is Employee's sole responsibility to secure health insurance coverage for Employee and Employee's dependents (and Company has no liability to Employee for his failure or inability to secure any such health insurance coverage, for whatever reason).

(f)    Business Expenses.  Subject to approval by Company and the provision by Employee to Company of satisfactory supporting documentation, Company shall, in accordance with its policies, pay or reimburse the Employee for reasonable business expenses incurred by the Employee during the Employment Period in connection with his employment hereunder.

2.    NONDISCLOSURE    AND    NONUSE    OF    CONFIDENTIAL INFORMATION.  Employee acknowledges that Company obtains or develops certain Confidential Information and Trade Secrets (as defined below) in the ordinary course of its business and that Employee may learn of, or have access to, such Confidential Information and Trade Secrets during the course of Employee's employment with Company. This Section 2 will survive the termination, for any reason, of this Agreement.

(a)    Definitions.    For the purposes of this Section, the term "Confidential Information" shall include, without limitation, any information pertaining to Company's customers, prospective customers, strategic partners and prospective strategic partners, know-how, forms, inventions, software, designs, processes, accounts, business or financial information, marketing information and strategies, pricing, supplier lists and pricing, techniques, methods, databases, business policy information, reports, lists, correspondence, computer disks, or any other information which is, or could be construed as, confidential in nature. Notwithstanding the foregoing, "Confidential Information" will not include information which (a) is public knowledge or becomes generally available to the public other than as a result of a disclosure by Employee; or (b) becomes available to Employee, on a non-confidential basis, from a source (other than from

Staples0010

Company or its agents) who is not bound by a confidentiality agreement with Company; or (c) is readily discoverable using non-confidential information. The term "Trade Secret" shall mean any data or information, in whatever form or format, constituting a Trade Secret under applicable law. In addition to all other remedies provided by law or in equity, Employee agrees and consents that Company shall be entitled to both preliminary and permanent injunctive relief to prevent a breach or contemplated breach by Employee of the covenants contained herein. The term "Applicable Post-termination Period" shall mean (y) with respect to Confidential Information, three (3) years after the termination of Employee's employment with Company, and (z) with respect to Trade Secrets, for as long as such information or data constitutes a Trade Secret.

(b)     Protection of Confidential Information. During the Employment Period, and for the Applicable Post-termination Period, Employee agrees not to divulge or disclose any Confidential Information or Trade Secrets of Company unless the information is required to be disclosed by law, court order or administrative regulation.

(c)     No Proprietary Right/Nonuse. Employee hereby agrees that any Confidential Information or Trade Secret is and shall remain the sole and exclusive property of Company for use in Company's business and shall be used solely in connection with Employee's employment with Company and shall not be used by Employee, directly or indirectly, in any other manner whatsoever. Under no circumstances whatsoever shall Employee have any proprietary or other legal right to the Confidential Information or Trade Secrets during, or subsequent to the termination or cessation of, Employee's employment with Company.

(d)     Return of Documents; Property. Upon termination or cessation of Employee's employment with Company, regardless of the reason for such termination or cessation, Employee agrees to promptly return to Company all property belonging to Company. "Property" includes, without limitation, documents or other written material belonging to Company, all copies of documents or other written material belonging to Company, laptops, tablets (e.g. iPads and similar devices), written or graphic records (in any media including electronic, audio or video), any electronic media containing information about or documents or other written material belonging to Company.

3.     **CREATIONS BELONG TO COMPANY.** Employee agrees that (a) all works of any nature created by Employee or under Company's direction in connection with Company's business, including, without limitation, manuals, marketing materials, analyses and reports, whether or not copyrightable or patentable are "works made for hire" and shall be the sole and complete property of Company; (b) any and all copyrights or patents to such works shall belong to Company; and (c) Employee shall execute all documents that may be necessary to convey or assign to Company any rights he or she may have in such works. To the extent any such works are not deemed to be "works made for hire," Employee, by virtue of the execution of this Agreement, hereby assigns all proprietary rights, including copyright, in these works to Company without further compensation. This Section 3 will survive the termination, for any reason, of this Agreement.

4.     **NON-SOLICITATION.**

(a)     Restrictions. For the period beginning on the Effective Date through and including the second anniversary of the date of the termination of Employee's employment with Company (the "Restricted Period"), Employee shall not, directly or indirectly, as an individual or

on behalf of a firm, corporation, partnership or other legal entity, except on behalf of and for the benefit of Company (i) solicit any customers of Company with which Employee had material contacts while an employee of Company, including, without limitation, those customers with which Company has contracts to sell products for the purpose of selling any beef, pork or chicken products or any other products sold by Company during the term of employment, or (ii) take any action that would interfere with, diminish or impair the valuable relationships that Company or its affiliates has with its customers, third party suppliers or vendors (with which Employee had material contacts while an employee of Company). The Restricted Period shall be tolled and extended for any period(s) during which the enforcement of the covenants is being litigated or arbitrated, including any appeal or confirmation proceedings, provided that the outcome of such litigation or arbitration is to enforce, in whole or in part, such covenants.

(b)     **Remedies**. **Employee has carefully read and considered the provisions of this Section 4, and having done so, agrees that the restrictions set forth in this Section 4 (including the Restricted Period) are fair and reasonable and are reasonably required for the protection of the interests of Company**. Without limiting other possible remedies available to Company, Employee agrees that injunctive or other equitable relief from a court of competent jurisdiction or an arbitrator shall be available to enforce the covenants set forth in this Section 4, such relief to be without the necessity of posting a bond. In the event that, notwithstanding the foregoing, any part of the covenants set forth in this Section 4 shall be held to be invalid, overbroad, .or unenforceable by an arbitration panel or a court of competent jurisdiction, the parties hereto agree that such invalid, overbroad, or unenforceable provision(s) may be modified or severed from this Agreement without, in any manner, affecting the remaining portions hereof (all of which shall remain in full force and effect). In the event that any provision of this Section 4 related to the Restricted Period shall be declared by an arbitration panel or a court of competent jurisdiction to exceed the maximum time period or activities such arbitration panel or court deems reasonable and enforceable, said Restricted Period shall be deemed modified to the minimum extent necessary to make the temporal restrictions or activities reasonable and enforceable.

5.     **AGREEMENT READ, UNDERSTOOD AND FAIR**. Employee has carefully read and considered all provisions of this Agreement and agrees that all of the restrictions set forth are fair and reasonable and are reasonably required for the protection of the interests of Company. Employee acknowledges that he/she had an opportunity to consult with legal counsel concerning this Agreement prior to his execution hereof.

6.     **MISCELLANEOUS.**

(a)     Assignment. Neither this Agreement nor any of the rights or obligations hereunder shall be assigned or delegated by Employee without the prior written consent of Company.

(b)     Entire Agreement; Amendment. This Agreement supersedes any and all prior agreements between the parties hereto, and constitutes the entire agreement between the parties hereto with respect to the matters referred to herein, and no other agreement, oral or otherwise, shall be binding between the parties unless it is in writing and signed by the party against whom enforcement is sought. This Agreement may not be altered, modified or amended except by a written instrument signed by each of the parties hereto. The paragraph headings contained in this Agreement are for convenience only and shall not be construed as a part of this Agreement.

(c)     Severability; Reformation. In the event that one or more of the provisions of this Agreement shall become invalid, illegal or unenforceable in any respect, the validity, legality

Staples0012

and enforceability of the remaining provisions contained herein shall not be affected thereby. In the event any provision of Section 2 or Section 4 is not enforceable in accordance with its terms, the Employee and Company agree that such Section, or such portion of such Section, shall be reformed to make it enforceable in a manner which provides Company the maximum rights permitted under applicable law.

(d)     Waiver.  Waiver by either party hereto of any breach or default by the other party of any of the terms of this Agreement shall not operate as a waiver of any other breach or default, whether similar to or different from the breach or default waived.

(e)     Counterparts; Facsimile.  This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Any executed copy of this Agreement transmitted by facsimile or e-mail shall be treated as an original signature for all purposes.

(f)     Governing Law; Jurisdiction.  This Agreement shall be governed by the laws of the State of Georgia, without reference to principles of conflicts or choice of law under which the law of any other jurisdiction would apply.  Each party hereby consents to the exclusive jurisdiction of the federal and state courts located in Atlanta, Georgia in any action on a claim arising out of, under or in connection with this Agreement.

(g)     Offset.  Whenever Company is to pay any sum to Employee (including, without limitation, salary and commission), any amounts that Employee owes to Company may be deducted from that sum (including, without limitation, salary and commission) before payment, after written notice to Employee.

(h)     Notices.  Any and all notices required or permitted to be given under this Agreement will be sufficient if furnished in writing, and sent by hand delivery, or by registered or certified mail.  Facsimile (during normal business hours) or overnight delivery (i) in case of Employee, to his last known residence or (ii) in case of Company, to its principal office in Savannah, Georgia (with a copy to John Staples in Alabama).

(i)     Representation and Warranty.  There is no prohibition, limitation or restriction against Employee, including but not limited to any covenant not to compete or any covenant not to solicit customers, which would prohibit, limit, restrict or adversely affect Employee's ability to enter into this Agreement or to perform the duties and obligations contemplated hereby.


**[SIGNATURES ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, this Employment and Confidentiality Agreement is executed and delivered by the parties as of the Effective Date.

"EMPLOYEE"

_Barbara Humphrey_ (SEAL)

Address:

"COMPANY"

DSM SALES AND MARKETING, LLC

By:

Name: _Kimberly Stapler_

Title:

6

## EXHIBIT A

Position: _Sales_____. Responsibilities will include such duties as assigned to Employee, from time to time, by Company's Chief Executive Officer or General Manager. Employee understands and acknowledges that key duties hereunder include, without limitation, increasing the level of sales of Company's products to the Applicable Customers (defined below) from the current level of sales.

Base Annual Salary: During the Employment Period, Company will pay Employee an aggregate Base Annual Salary in the amount of ▮▮▮▮▮▮ AND NO/100 DOLLARS ($▮▮▮▮▮) per annum, payable in installments in accordance with Company's normal payroll procedures. Base Annual Salary determined for a period of less than a full year shall be pro rated to reflect such shorter period.

Additional Amounts: During the Employment Period, Company will pay to Employee the sum of _____ Dollars ($_____) per month as partial payment for Employee to secure personal health insurance coverage. Employee acknowledges that Company does not provide any such health insurance coverage and it is Employee's sole responsibility to secure health insurance coverage for Employee and Employee's dependents (and Company has no liability to Employee for his failure or inability to secure any such health insurance coverage, for whatever reason).

Staples0015