FILED

2018 Feb-27  AM 11:15
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

KIMBERLY and JOHN STAPLES,    )
    )
    Plaintiffs,    )
    )    **Civil Action No.:**
v.    )    <u>**7:18-cv-00160-TMP**</u>
    )
H. WALKER ENTERPRISES, LLC;    )
RENAISSANCE MAN FOOD SERVICES,    )
LLC; and SIMMONS FOODS, INC.,    )
    )
    Defendants.    )

---

## ANSWER AND COUNTERCLAIM OF RENAISSANCE MAN FOOD SERVICES, LLC

### Answer

Renaissance Man Food Services, LLC, ("RMFS") Defendant, hereby files its Answer to the Verified Complaint for Damages pursuant to Fed. R. Civ. P. 12, as follows:

### First Defense

The Complaint fails to state a claim upon which relief may be granted.

### Second Defense

Plaintiffs' claims for tortious interference are barred because RMFS is not a stranger to the contractual and business relationships at issue.

### Third Defense

Plaintiffs' claims for conspiracy are barred because there was no underlying tort and conspiracy itself furnishes no civil cause of action.

### Fourth Defense

Kimberly Staples' claim for breach of fiduciary duty is barred because Defendant RMFS did not owe her a fiduciary duty.

**Fifth Defense**

Plaintiffs' claims for tortious interference are barred based upon justification.

**Sixth Defense**

RMFS responds to the enumerated allegations of the Complaint as follows:

1.

RMFS admits that Kimberly Staples ("K. Staples") is a 50% owner and member of DSM Sales and Marketing, LLC ("DSM"); that DSM is a Delaware limited liability company formed on September 23, 2016; that K. Staples is citizen of Alabama; that DSM's principal place of business in Alabama was 1701 Saint Andrews Drive, Tuscaloosa, Alabama 35406; that since the time of DSM's formation, K. Staples has been employed by DSM for a salary of $84,000 annually; that K. Staples has served as a co-manager of DSM; that her salary is distinct from her membership interest in DSM; and that DSM acted as food broker for RMFS after October 1, 2016. RMFS denies the remaining allegations contained in Paragraph 1 of the Complaint.

2.

RMFS admits that at various times after October, 1, 2016, DSM employed Christopher Thurber and Barbara Humphrey, and that John Staples ("J. Staples") served as a consultant to DSM. RMFS denies the remaining allegations contained in Paragraph 2 of the Complaint.

3.

RMFS admits that Staples conducted a portion of the accounting function of DSM through an operating account with West Alabama Bank in Tuscaloosa; that it transacted business with DSM and K. Staples in Alabama; that it solicited distributors, purchasers and customers in Alabama and engaged in other business transactions in Alabama. RMFS denies the remaining allegations contained in Paragraph 3 of the Complaint.

4.

RMFS admits that DSM employee Humphrey executed an employment agreement; that the salaries of Humphrey and Thurber were paid from DSM's bank account in Alabama as were their expense reimbursements; and that K. Staples participated in the management of DSM's accounting function.  RMFS denies the remaining allegations contained in Paragraph 4 of the Complaint.

5.

RMFS admits that H. Walker Enterprises, LLC ("HWE") is a Delaware limited liability company; that Herschel Walker ("Walker") is its sole member; that Walker is a citizen of Texas; and that HWE can be served at the Savannah, Georgia address.  RMFS denies the remaining allegations contained in Paragraph 5 of the Complaint.

6.

Denied.

7.

RMFS admits that it is a subsidiary of HWE with its principal place of business located at 22 E. Montgomery Crossroads, Savannah, Georgia 31406 and that it may be served at that address.  RMFS denies the remaining allegations of Paragraph 7 of the Complaint.

8.

Admitted.

9.

RMFS admits that Julie Blanchard is the other 50% owner and member of DSM, is in a relationship with Walker, and has been the co-manager of DSM.  RMFS denies the remaining allegations contained in Paragraph 9 of the Complaint.

- 3 -

10.

RMFS admits that it and an affiliate of Simmons Foods, Inc., Simmons Prepared Foods Inc. ("Simmons") entered into a business relationship in 2007.  RMFS denies the remaining allegations contained in Paragraph 10 of the Complaint.

11.

RMFS admits that from April 2009 until December 27, 2017, J. Staples was a contracted employee of RMFS leased to it by Simmons; that he was paid by and received employee benefits from Simmons which were paid for by RMFS; and that J. Staples was the general manager of RMFS.  RMFS denies the remaining allegations contained in Paragraph 11 of the Complaint.

12.

RMFS admits that its business relationship with Simmons includes a profit sharing arrangement with respect to applicable products, and, depending upon the circumstances, an administrative fee.  RMFS denies the remaining allegations contained in Paragraph 12 of the Complaint.

13.

RMFS admits that it sold waffle food products to Jet Food Stores in Georgia in 2017. RMFS denies the remaining allegations contained in Paragraph 13 of the Complaint.

14.

RMFS lacks sufficient knowledge upon which to base a response to the allegations contained in Paragraph 14 of the Complaint and they are therefore denied.

15.

RMFS denies that J. Staples owed a duty of loyalty to Simmons.  RMFS lacks sufficient information upon which to base a response to the remaining allegations contained in Paragraph 15 of the Complaint and they are therefore denied.

16.

RMFS lacks sufficient information upon which to base a response to the allegations contained in Paragraph 16 of the Complaint and they are therefore denied.

17.

RMFS admits that it terminated J. Staples' employment with RMFS on December 27, 2017.  RMFS denies the remaining allegations contained in Paragraph 17 of the Complaint.

18.

RMFS lacks sufficient information upon which to base a response to the allegations contained in Paragraph 18 of the Complaint and they are therefore denied.

19.

Denied.

20.

Denied.

21.

RMFS lacks sufficient information upon which to base a response to the allegations contained in Paragraph 21 of the Complaint and they are therefore denied.

22.

RMFS lacks sufficient information upon which to base a response to the allegations contained in Paragraph 22 of the Complaint and they are therefore denied.

23.

RMFS lacks sufficient information upon which to base a response to the allegations contained in Paragraph 23 of the Complaint and they are therefore denied.

24.

RMFS hereby incorporates its responses to the allegations contained in Paragraphs 1 through 23 of the Complaint.

25.

RMFS denies that J. Staples owed Simmons a duty of loyalty and honesty.  RMFS denies the remaining allegations contained in Paragraph 25 of the Complaint.

26.

RMFS lacks sufficient information upon which to base a response to the allegations contained in Paragraph 26 of the Complaint and they are therefore denied

27.

RMFS lacks sufficient information upon which to base a response to the allegations contained in Paragraph 27 of the Complaint and they are therefore denied

28.

RMFS admits that Walker knew that J. Staples was employed through Simmons and leased to RMFS. RMFS denies the remaining allegations contained in Paragraph 28 of the Complaint.

29.

Denied.

30.

Denied.

31.

Denied.

32.

Denied.

33.

RMFS hereby incorporates its responses to the allegations contained in Paragraphs 1 through 32 of the Complaint.

34.

Denied.

35.

Denied.

36.

Denied.

37.

Denied.

38.

Denied.

39.

Denied

40.

RMFS hereby incorporates its responses to the allegations contained in Paragraphs 1 through 39 of the Complaint.

41.

Denied.

42.

Denied

43.

Denied.

44.

Denied.

45.

RMFS hereby incorporates its responses to the allegations contained in Paragraphs 1 through 44 of the Complaint.

46.

Denied.

47.

Denied.

48.

Denied.

49.

Denied.

50.

Denied.

51.

Denied.

52.

RMFS hereby incorporates its responses to the allegations contained in Paragraphs 1 through 51 of the Complaint.

53.

Denied.

54.

Denied.

55.

Denied.

56.

Denied.

57.

Denied.

58.

Denied.

59.

Denied.

60.

RMFS hereby incorporates its responses to the allegations contained in Paragraphs 1 through 59 of the Complaint.

61.

Denied.

62.

Denied.

63.

Denied.

64.

Denied.

## Counterclaim

RMFS hereby files its counterclaim against J. Staples and K. Staples as follows:

1.

J. Staples was the general manager of RMFS.

2.

RMFS is in the food service business.

3.

As general manager, J. Staples was responsible for the day to day operations of RMFS, including dealings with Simmons.

4.

As general manager, J. Staples had the authority to negotiate contracts, approve invoices and RMFS expense reimbursements, review the payment of broker commissions and communicate with RMFS's CEO, Herschel Walker ("Walker").

5.

Walker is the sole owner of H. Walker Enterprises, LLC ("HWE") which in turn owns all of the membership interest in RMFS.

6.

J. Staples had no business dealings with HWE.

7.

RMFS reposed great trust and confidence in J. Staples.

8.

Staples also exercised a controlling influence over RMFS' business activities and conduct.

9.

J. Staples has violated that trust by approving unauthorized commission payments for his benefit and the benefit of his wife (K. Staples) and daughter (Blair Staples) and obtaining reimbursement for business expenses that were not incurred for the benefit of RMFS, including expenses that were for the benefit of DSM.

## **DSM**

10.

Sometime in 2014, J. Staples fired the existing brokers and hired Diversified Food Solutions ("DFS"), for the sale of some of RMFS' food products.

11.

J. Staples did not inform Walker prior to firing the existing brokers and hiring DFS.

12.

Nor did J. Staples disclose to Walker for several months that he had agreed for RMFS to pay DFS a "retainer" fee of up to $30,000, well in excess of the commission otherwise payable to DFS.

13.

Nor did J. Staples disclose to Walker at such time that his wife, K. Staples, was one of the owners of DFS.

14.

J. Staples created and oversaw the RMFS relationship with DFS.

15.

J. Staples eventually disclosed to Walker that RMFS was using DFS as a broker after Walker was informed about it by a third party.

16.

At that time, he also disclosed his wife, K. Staples, had an ownership interest in DFS.

17.

J. Staples then demanded that K. Staples and the Staples' daughter, Blair Staples, be employed by DFS and K. Staples continued to have an ownership interest in DFS.

18.

DFS received commission payments on sales of RMFS' products.

19.

Based upon her ownership interest in DFS, upon information and belief K. Staples received a share of the inflated profits of DFS in addition to her salary.

20.

J. Staples apparently terminated the broker relationship with DFS because one of the broker's executives yelled at Blair Staples for not working.

21.

J. Staples did not tell Walker that he was terminating the brokerage agreement.

22.

J. Staples then caused RMFS to enter into a new broker arrangement with Diversified Sales & Marketing ("Diversified") as of October 27, 2014.

23.

Not until 2016 did Walker learn that K. Staples owned a 60% majority equity stake in Diversified when J. Staples informed Walker of his intent to sell the other 40% to Robert Thurber, which Walker opposed (for reasons including Thurber's affiliation with an RMFS competitor).

24.

Diversified was terminated as of September 30, 2016 and was replaced as broker by DSM Sales and Marketing, LLC ("DSM") as of October 1, 2016.

25.

The members of DSM were K. Staples and Julie Blanchard with equal shares.

26.

Unknown to Walker, Blanchard and RMFS, J. Staples caused DSM to be paid unauthorized commissions beyond the contractual agreement between RMFS and DSM.

27.

In an effort to increase the amount of profits distributed to K. Staples, J. Staples began approving the payment of commissions to DSM on non-CATMAN (Sysco category management) product lines and increased the amount of commissions payable to DSM without Walker's knowledge.

28.

These payments were not for the benefit of RMFS and were paid solely to increase DSM's profits, of which K. Staples received at least 50%.

29.

J. Staples was able to avoid detection because the back office function for the payment of commissions was performed by Simmons, and J. Staples either (i) did not provide commission reports to Walker and Blanchard, or (ii) altered Simmons' commission reports when he received them from Simmons before forwarding them to Walker and Blanchard.

30.

Beginning in September 2017, Walker repeatedly informed J. Staples that DSM was not meeting the needs of RMFS.

31.

Prior to that time, Walker informed J. Staples that he was not satisfied with J. Staples' performance as general manager and had lost trust in J. Staples' ability to lead RMFS because of his family trying to act as RMFS' broker.

32.

In November 2017, Walker informed J. Staples that he was going to transition from using DSM as a broker.

33.

Armed with that information, J. Staples sought to find a new broker to work with RMFS.

34.

J. Staples also spoke with Robert Thurber about setting up a new broker in which J. Staples or K. Staples, or both would own equity.

35.

As a quid pro quo for giving a prospective broker RMFS' business, J. Staples asked that the broker hire K. Staples and Blair Staples as employees, contrary to Walker's plans for new brokers (of which plans J. Staples was aware).

**Expenses**

36.

As general manager, J. Staples approved business expenses incurred by employees, including himself, that were paid by RMFS.

37.

Unbeknownst to RMFS, J. Staples approved expense reimbursement for personal expenses and expenses of DSM that were paid out of RMFS' funds.

38.

J. Staples did not want Walker to see the expense reports.

39.

J. Staples again avoided detection because the back office accounting function for the payment of expenses was performed by Simmons, which in turn was relying on J. Staples' approval of the expense reports.

40.

The improper expenses charged to RMFS included meals J. Staples had with his wife, family and friends, unauthorized office expenses, a $10,000 contribution to the University of Alabama, money contributed to his granddaughter's school, sporting event tickets, sports memorabilia, gift cards, personal merchandise, travel costs for personal, family and business

travel unrelated to RMFS, numerous unauthorized add on retainers and commissions, and DSM incurred expenses.

## **Grate Chef**

41.

In 2016, J. Staples became interested in having DSM acquire a grilling equipment company called Grate Chef.

42.

Walker and RMFS had no interest in that company.

43.

In May 2016, J. Staples traveled to a trade convention called The National Hardware Show in Las Vegas.

44.

That trade show had nothing to do with RMFS' business.

45.

J. Staples nevertheless charged all of his travel expenses related to the trade show to RMFS.

46.

At the time, J. Staples had in his possession autographed sports memorabilia signed by Walker, a Heisman Trophy winner, pro football player, Olympic athlete and sports personality.

47.

The memorabilia was paid for by RMFS and intended to be used for RMFS' customers and business development.

48.

Instead, without authorization, J. Staples used Walker's name, likeness, signature and sports memorabilia to attract patrons to the Grate Chef booth at the trade show. A true and correct copy of the promotion used by J. Staples is attached hereto as Exhibit A.

## Count One

### (Breach of Fiduciary Duty – J. Staples)

49.

As general manager, J. Staples owed RMFS fiduciary duties of care and loyalty.

50.

J. Staples used his position of authority to enrich himself and his family members at the expense of RMFS' interests.

51.

By his acts and omissions, including the self-dealing and use of RMFS' funds and property for personal purposes without authorization, J. Staples breached the fiduciary duties he owed to RMFS.

52.

RMFS has been damaged by this breach.

53.

J. Staples is liable to RMFS for damages in an amount to be proven at trial.

54.

J. Staples' misappropriation and waste of RMFS' funds shows willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to the consequences.

55.

J. Staples is therefore liable for punitive damages in an amount to be determined by the enlightened conscience of the jury.

## **Count Two**

### **(Aiding and Abetting Breach of Fiduciary Duty – K. Staples)**

56.

RMFS realleges and incorporates herein the allegations contained in Paragraph 1 through 55 of the Counterclaim.

57.

K. Staples knew that J. Staples owed a duty of loyalty and duty of care to RMFS.

58.

K. Staples nevertheless assisted her husband in violating those duties in order to enrich herself.

59.

K. Staples received profits from unauthorized commissions charged by DSM, meals, trips, travel amenities, sporting event tickets, gifts and other benefits charged to RMFS, directly and indirectly, as a result of J. Staples' breaches of fiduciary duty.

60.

K. Staples thus aided and abetted J. Staples' breach of fiduciary duty.

61.

K. Staples is liable to RMFS for damages resulting from the breaches of fiduciary duty.

62.

K. Staples' interference with J. Staples' fiduciary duty shows willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to the consequences.

63.

K. Staples is therefore liable for punitive damages in an amount to be determined by the enlightened conscience of the jury.

### Count Three

**(Negligence – J. Staples)**

64.

RMFS realleges and incorporates herein the allegations contained in Paragraph 1 through 63 of the Counterclaim.

65.

J. Staples owed RMFS a duty of care.

66.

J. Staples breached the duty of care.

67.

As a result of J. Staples' negligence, RMFS has been injured.

68.

J. Staples is liable to RMFS for all damages sustained by it as a result of J. Staples' negligence.

WHEREFORE, RMFS requests this Court:

(a)      dismiss the Complaint;

(b)     alternatively, grant judgment for RMFS and against Plaintiffs on all counts of the

Complaint;

(c)     grant judgment for RMFS and against J. Staples and K. Staples on the

counterclaim;

(c)     tax all costs against Plaintiff; and

(d)     grant RMFS such additional relief as this Court deems just.

This 27th day of February, 2018.

/s/ Michael J. King
Michael J. King (Pro Hac Vice)
**GREENBERG TRAURIG, LLP**
3333 Piedmont Road NE
Terminus 200, Suite 2500
Atlanta, Georgia 30305
T:  (678) 553-2100
F:  (678) 553 2212
kingm@gtlaw.com
**Counsel for Defendants**
**H. Walker Enterprises, LLC &**
**Renaissance Man Food Services, LLC**

George Walton Walker, III (WAL097)
**THE FINLEY FIRM, P.C.**
P.O. Box 3596 (36831)
611 E Glenn Ave.
Auburn, AL 36830
T:  (334) 209-6371
F:  (334) 209-6373
gwwalker@thefinleyfirm.com

# Exhibit A

# Grate Chef Promotion



# Grate Chef Inc.'s
# rschel Walker Football Giveaway

**Grate Chef will be giving away three authentic signed Herschel Walker Footballs at the 2016 National Hardware Show in Las Vegas.**

*When:* May 4th, 5th, and 6th
*Where:* Outdoor Booth 11
*How:* Drop a business card at our booth




IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY and JOHN STAPLES, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | Civil Action No.: |
| v. | ) | <u>7:18-cv-00160-TMP</u> |
| | ) | |
| H. WALKER ENTERPRISES, LLC; | ) | |
| RENAISSANCE MAN FOOD SERVICES, | ) | |
| LLC; and SIMMONS FOODS, INC., | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of February, 2018, a copy of the foregoing

**ANSWER AND COUNTERCLAIM OF RENAISSANCE MAN FOOD SERVICES, LLC**

was filed via CM/ECF and served upon counsel of record by electronic notification:

Keri Donald Simms
WEBSTER HENRY FIRM, P.C.
Suite 445 East
Two Perimeter Park South
Birmingham, Alabama 35243
Ksimms@websterhenry.com

Talley R. Parker
JACKSON LEWIS P.C.
500 N. Akard
Suite 2500
Dallas, TX 75201
talley.parker@jacksonlewis.com

Thomas A. Davis
JACKSON LEWIS P.C.
First Commercial Bank Building
800 Shades Creek Parkway, Suite 870
Birmingham, AL 35209
DavisT@jacksonlewis.com

- 21 -

This 27th day of February, 2018.

/s/ Michael J. King
Michael J. King (Pro Hac Vice)
**GREENBERG TRAURIG, LLP**
3333 Piedmont Road NE
Terminus 200, Suite 2500
Atlanta, Georgia 30305
T:  (678) 553-2100
F:  (678) 553 2212
kingm@gtlaw.com
**Counsel for Defendants**
**H. Walker Enterprises, LLC &**
**Renaissance Man Food Services, LLC**

George Walton Walker, III (WAL097)
**THE FINLEY FIRM, P.C.**
P.O. Box 3596 (36831)
611 E Glenn Ave.
Auburn, AL 36830
T:  (334) 209-6371
F:  (334) 209-6373
gwwalker@thefinleyfirm.com

*ATL 22625908v4*