FILED
2018 Apr-26  AM 10:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **KIMBERLY and JOHN STAPLES,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **V.** ) | **Civil Action No.: 7:18-cv-00160-LSC** |
| ) | |
| **H. WALKER ENTERPRISES, LLC;** ) | |
| **RENAISSANCE MAN FOOD SERVICES, LLC; and SIMMONS** ) | |
| ) | |
| **Defendants.** ) | |

## PLAINTIFFS' THIRD (CONSOLIDATED) AMENDED COMPLAINT

Mr. and Mrs. Staples, by and through their undersigned Counsel, and pursuant to the Court's Order of April 17, 2018 (Crt.Rec.Doc. 36), hereby submits this as their Third (Consolidated) Amended Complaint.   All substantive amendments to the Original, First Amended, and Second Amended Complaint are incorporated herein by reference.   To circumvent confusions, the Complaints heretofore filed are consolidated.

## INTRODUCTION

## PARTIES, JURISDICTION, VENUE AND FACTUAL ALLEGATIONS

1.      Kimberly Staples (hereinafter "Mrs. Staples") is a 50% owner or member of an entity known as DSM Sales and Marketing, LLC (hereinafter "DSM").  DSM is a Delaware limited liability Company formed on September 23, 2016.  Mrs. Staples' citizenship as an LLC member of DSM is the State of Alabama.  As Exhibit 1 reflects DSM's principal place of business is 1701 Saint Andrews Drive Tuscaloosa, Alabama 35406 (the Staples' Residence address prior to the 5712 Rice Mine Road address).  Since the time of DSM's formation on September 23, 2016 Mrs. Staples has also been employed by DSM and has acted as the Manager for which she was paid compensation in the form of a salary in the amount of $84,000.00 yearly.  Her salary is separate and distinct from her membership interest in the LLC.  Under Alabama law she has an expected pecuniary interest in such membership interest, salary and agreement with DSM.  Prior to the events of December 30, 2017 (discussed below with an effective date of January 30, 2018) DSM acted as a food broker for HWE and/or RMFS.  A true and correct copy of the Operating Agreement of DSM prepared by Greenburg Traurig, LLP is attached to this Second Amended Complaint as Exhibit 10.

2.      For the period September 23, 2016 until the time of the filing of this suit DSM had the following employees in the State of Alabama in addition to Mrs. Staples in her capacity and role as Manager: Christopher Thurber (Alabama address redacted per Court rules); Barbara Humphrey (Alabama address redacted

per Court rules).  During such time John Staples (hereinafter "Mr. Staples") served

as a consultant to DSM and was paid a consulting fee or salary of

$40,000.00.   Under Alabama law Mr. Staples has an expected pecuniary interest in

such agreement, arrangement, employment, and/or salary.

3.     At all times material hereto Mrs. Staples, as Manager of DSM,

conducted the financial transactions of DSM through an operating account with

West Alabama Bank- an Alabama Bank with offices in Tuscaloosa,

Alabama.  Defendants transacted business with DSM and Mrs. Staples, in part, by

and through West Alabama Bank.   Defendants do and have conducted business in

Alabama by the shipment of food products to Alabama sold by DSM, by soliciting

distributors, purchasers, and customers in Alabama, and by engaging in other

business transactions with other entities in Alabama.   Defendant Simmons

(referenced below) would transmit commission earnings payments for the account

of DSM in such financial institution in the State of Alabama prior to ceasing such

conduct as addressed further below.

4.     As part of their employment with DSM, employees Thurber and

Humphrey executed Employment Agreements in the State of Alabama. Exhibit 2

as redacted.  Thurber and Humphrey were paid salaries which transactions

occurred in the State of Alabama.   Thurber and Humphrey were reimbursed for

expenses which transactions occurred in the State of Alabama.   As stated Mrs.

Staples managed these events and was paid a salary by DSM in the State of Alabama for such management of the business operations of DSM.  Such agreements protected DSM's "Trade Secrets", information, and contained non-solicitation and non-competition provisions.

    5.     H. Walker Enterprises, LLC (hereinafter "HWE") is a Delaware Limited Liability Company.  The sole or single member of such entity is Herschel Walker (hereinafter "Walker").  Walker's state of citizenship for LLC purposes is Texas where he resides.   The LLC is managed by Herschel Walker and Carol Walker (sister of Walker) at 22 E. Montgomery Crossroads, Savannah, Georgia 31406.  This entity may be served with process at such address in the State of Georgia.

    6.     At all times referenced herein, Walker and/or Carol Walker were acting as agents, servants, and/or employees of HWE and/or RMFS as referenced below.

    7.     Renaissance Man Food Services, LLC (hereinafter "RMFS") is a subsidiary of H. Walker Enterprises, LLC (HWE).   RMFS is solely owned by Walker and he is the sole member of RMFS.   Carol Walker and/or Walker operate RMFS with its principal place of business located at 22 E. Montgomery Crossroads, Savannah, Georgia 31406.  This entity may be served with process at such address in the State of Georgia.

8.      Simmons Foods, Inc., correctly designated by the First Amended Complaint as Simmons Prepared Foods, Inc. (Crt.Rec.Doc. 26) (hereinafter "Simmons") is an Arkansas corporation with its principal place of business located at 601 N. Hico Street, Siloam Springs, AR 72761.  This entity may be served with process at such address in the State of Arkansas.

9.      Julie Blanchard (hereinafter "Blanchard") is the other 50% owner or member of DSM.   Blanchard is the girlfriend and/or fiancé of Walker.   Blanchard is also an agent, servant, and/or employee of H. Walker Enterprises, LLC (HWE).   At all times material herein Blanchard acted as an agent, servant, and/or employee of HWE or member of DSM.  As Co-Member of DSM Blanchard owed Mrs. Staples a Fiduciary Duty to act fairly and fulfill Mrs. Staples' prospective expectations to a proportionate share of the profits of DSM, prospective salary as Manager of DSM, and to be secure in in her livelihood through employment and benefits with DSM.  Mrs. Staples has a protected right to her proportionate share of all prospective commissions to be paid to DSM by Simmons going forward and during the period of ongoing oppression being undertaken by Blanchard acting as agent, servant, employee, and/or member of HWE and/or DSM.  Mrs. Staples hereinafter seeks the juridical creation of a constructive trust to hold in trust for her benefit during the period of oppression all such commissions.

10.     Based upon information and belief, in 2007, Simmons, HWE, and/or RMFS entered into a business relationship among them.  According to published statements made by Walker, the entities jointly own chicken processing plants or facilities in the State of Arkansas located in Siloam Springs, Arkansas the location or principal place of business of Simmons. Exhibit 3 as redacted.

11.     Beginning in April 2009 and up to December 27, 2017 Mr. Staples was employed in a dual capacity with Simmons and RMFS.  Mr. Staples was an employee of Simmons.  He was paid by Simmons and was provided various employment benefits by Simmons.  He also was the General Manager of RMFS.   As such Mr. Staples owed dual allegiance and loyalties to both Simmons and RMFS.  Mr. Staples had the right to be secure in his livelihood through employment with Simmons and his corresponding benefits from such employment.

12.     Based upon information and belief the business relationship between Simmons and HWE or RMFS provided for a profit and expense sharing agreement and an administrative fee paid by HWE or RMFS to Simmons concerning the sale of food products.

13.     Despite the above agreement between Simmons and HWE/RMFS, in August 2017, HWE and/or RMFS begin selling waffle food products in an arrangement with Jet Food Stores of Georgia.   Based upon information and belief and upon statements made by the Controller of Simmons, Ms. Carmen Seal, to Mr.

6

Staples, (set out below) HWE and/or RMFS did not intend to share the profits with or incur an administrative fee of Simmons with Simmons related to such sales and arrangement as between HWE/RMFS and Jet Foods.

14.    Despite the above agreement between Simmons and HWE/RMFS, in the Fall of 2017, the Simmons Controller Carmen Seal questioned Mr. Staples regarding whether or not Simmons was getting involved in the sale of waffle food items.  The Controller stated to Mr. Staples that Carol Walker of HWE or RMFS had submitted expense invoices to Simmons for Simmons to pay to HWE/RMFS for expenses associated in the sale of the waffle food items concerning the HWE/RMFS arrangement with Jet Foods.  Mr. Staples advised the Simmons Controller not to pay such expenses.

15.    Because of Mr. Staples employment relationship with Simmons and his loyalty, in a meeting between Mr. Staples and the President of Simmons, David Jackson, on December 11, 2017, which Mr. Staples understood was confidential, Mr. Staples discussed with the Simmons' President the above facts related to the waffle food matter as well as other matters.

16.    Despite being assured by the Simmons' President that such disclosures were confidential, based upon information and belief, the information was disclosed to Walker by the Simmons' President or other unknown agents,

servants, and/or employees of Simmons.  Such disclosure occurred on December 12, 2017 and prior to December 27, 2017.

17.     On December 27, 2017 Walker, acting on behalf of HWE, RMFS, and in relationship with Blanchard, terminated Mr. Staples' employment with RMFS. Such termination was in retaliation for Mr. Staples' disclosure and discussions with Simmons when questioned by Simmons concerning the waffle food expenses which Carol Walker submitted to Simmons to be paid by Simmons.

18.     Despite Mr. Staples being an employee of Simmons, based upon information and belief and at the direction of Walker, Simmons constructively terminated Mr. Staples by cutting off his Simmons' email account and requesting that he tender his Simmons' issued laptop computer to Simmons which he did on January 4, 2018.  These events occurred in December 2017 and subsequent to December 27, 2017 when Walker terminated Mr. Staples as GM of RMFS.

19.     At the same time that Walker retaliated against Mr. Staples, Walker and Blanchard, acting in their capacities as agents, servants, employees and/or member of HWE, RMFS, and/or DSM sought to "force" Mrs. Staples to give up her 50% membership interest in DSM to Blanchard for the price of $10.00.  In order to "force" Mrs. Staples' compliance HWE and/or RMFS "temporarily suspended" the broker agreement between RMFS and DSM until such time as Blanchard could acquire 100% ownership and complete control of DSM.

20.     When Mrs. Staples refused, Walker and/or Blanchard acting in their capacities and relationship between one another as agents, servants, employees and/or member of  DSM began to oppress Mrs. Staples in the following ways:  (1) the broker agreement between RMFS and DSM was not temporarily suspended but terminated Exhibit 4;  (2)  the commissions due and owed from Simmons to DSM were withheld by Simmons at the direction and request of HWE or RMFS or Blanchard Exhibit 5; (3) RMFS sought to poach the Alabama DSM employees Thurber and Humphrey Exhibit 6; (4) RMFS poached Humphrey and caused Humphrey to breach her employment agreement with DSM in the State of Alabama and acquire for the benefit of HWE and/or RMFS DSM's "Trade Secrets" Exhibit 7;  (5) Humphrey was instructed to retain possession of her DSM issued property (computer), food show equipment, and supplies by HWE, RMFS, or Blanchard and has used such property of DSM in violation of her Alabama Employment Contract/Agreement Exhibit 7; (6) HWE and/or RMFS have interfered with DSM's ongoing operations and attempts by DSM to acquire other broker agreements with other entities; (7) by refusing to allow the processing and payment of payroll for Mrs. Staples and DSM employee Thurber Exhibit 8; and/or (8) otherwise seeking to shut down the operations of DSM thereby individually damaging Mr. and Mrs. Staples interest and expectations protected under Alabama law Exhibit 9.

21.     This Court has subject matter jurisdiction over Mr. and Mrs. Staples' claims pursuant to 28 U.S.C. Section 1332 (diversity).  This Court has supplemental jurisdiction over Mr. and Mrs. Staples' state law causes of action under 28 U.S.C. Section 1367.

22.     The amount in controversy between Mr. and Mrs. Staples and each of the Defendants exceed $75,000.00.   The claims of Mr. and Mrs. Staples are so integrated and tied together by Defendants' combination and conspiracy to harm Mr. and Mrs. Staples that the relief requested against the Defendants is single in nature.  Therefore, if necessary, Defendants' liability may be aggregated for the purposes of satisfying the jurisdictional minimum set forth in 28 U.S.C. Section 1332.

23.     Venue is proper in the Northern District of Alabama, Western Division, pursuant to 28 U.S.C. Section 1391 because the acts giving rise to liability occurred in the counties located in the Western Division of the Northern District of Alabama.

## CAUSES OF ACTION

## COUNT ONE

### (Against HWE and/or RMFS)

### Interference with Business Relationship of Mr. Staples and Simmons

24.     Mr. and Mrs. Staples hereby incorporate the foregoing paragraphs 1-23 as if fully set forth herein.

25.     Mr. Staples employment relationship with Simmons was such that he owed a duty of loyalty to honestly reply to Simmons' inquiries related to the request for information concerning the attempts by HWE and/or RMFS, by and through their agent, servant, and/or employee Carol Walker, to submit to Simmons for payment expenses for the sale and promotion of food products of which HWE and/or RMFS did not intend to share the revenue, profits, or administrative fee with Simmons. Mr. Staples' relationship with Simmons was a constructive right and concerned his pursuit of his trade, profession, and/or business.

26.     When asked by agents, servants, and employees of Simmons concerning these events, Mr. Staples replied honestly and was told by Simmons that such information would be held in confidence.

27.     Despite the cloak of confidentiality, Simmons, by and through its agents, servants, and/or employees disclosed and shared the information with Walker.

28.     Walker as owner, agent, servant, and/or employee of HWE and/or RMFS knew of Mr. Staples business relationship and employment with Simmons.

29.     Defendants HWE and/or RMFS affirmatively,    intentionally, knowingly, maliciously, and/or unlawfully interfered with Mr. Staples business

relationship with Simmons when it terminated Mr. Staples and when it instructed Simmons to constructively terminate Mr. Staples.

30.    Mr. Staples suffered damages due to such interference and actions in the form loss of current and prospective constructive employment, loss of a pecuniary economic interest, loss of business relationship, lost earnings, and/or lost benefits.

31.    Such conduct caused Mr. Staples to sustain mental anguish.

32.    Such conduct was affirmative, intentional, knowingly, malicious, unjustified, and/or unlawful in nature and an interference with Mr. Staples' constructive rights in such relationship.

WHEREFORE, PREMISES CONSIDERED, Mr. Staples ask the jury to award him compensatory damages in the jury's discretion to compensate him for his injuries, harms, and damages as aforesaid and for an award of punitive damages in the jury's discretion to punish such Defendants for such wrongful conduct and to deter other similarly situated entities from engaging in such conduct in the future.

## COUNT TWO

### (Against HWE and RMFS)

### Interference with Business Relationship of Mr. Staples and DSM

33.    Mr. and Mrs. Staples hereby incorporate the foregoing paragraphs 1-32 as if fully set forth herein.

34.    Mr. Staples has a prospective pecuniary interest in his relationship with DSM as a paid consultant.

35.    Defendants knew or should have known of such arrangement and agreement as between DSM and Mr. Staples.

36.    Defendants affirmatively, intentionally, knowingly, maliciously, and/or unlawfully interfered with such relationship, arrangement, and agreement as a result of the wrongful conduct alleged herein in the form of:  (1) the broker agreement between RMFS and DSM was not temporarily suspended but was terminated Exhibit 4;  (2)  the commissions due and owed from Simmons to DSM were withheld by Simmons at the direction and request of HWE or RMFS or Blanchard Exhibit 5; (3) RMFS sought to poach the Alabama DSM employees Thurber and Humphrey Exhibit 6; (4) RMFS poached Humphrey and caused Humphrey to breach her employment agreement with DSM in the State of Alabama and obtain for the benefit of HWE and/or RMFS DSM's protected "Trade Secrets" Exhibit 7;  (5) Humphrey was instructed to retain possession of her DSM issued computer, food equipment, and supplies by HWE, RMFS, or Blanchard and has used such property in violation of her Alabama Employment Contract with DSM  Exhibit 7; (6) HWE and/or RMFS have interfered with

DSM's ongoing operations and attempts by DSM to acquire other broker agreements with other entities; (7) by refusing to allow the processing and payment of payroll for Mrs. Staples and DSM employee Thurber Exhibit 8; and/or (8) otherwise seeking to shut down the operations of DSM thereby individually damaging Mr. and Mrs. Staples interest and expectations protected under Alabama law Exhibit 9.

37.    Due to such wrongful conduct Mr. Staples has suffered the pecuniary loss of the benefits of his relationship with DSM.

38.    Due to such wrongful conduct Mr. Staples has suffered consequential losses for which the interference is as legal cause.

39.    Due to such wrongful conduct Mr. Staples has suffered mental anguish.

WHEREFORE, PREMISES CONSIDERED, Mr. Staples ask the jury to award him compensatory damages in the jury's discretion to compensate him for his injuries, harms, and damages as aforesaid and for an award of punitive damages in the jury's discretion to punish such Defendants for such wrongful conduct and to deter other similarly situated entities from engaging in such conduct in the future.

## COUNT THREE

### (Against HWE and RMFS)

### Civil Conspiracy

40.    Mr. and Mrs. Staples hereby incorporate the foregoing paragraphs 1-39 as if fully set forth herein.

41.    As concerns the conduct referenced in Count Two Defendants conspired among them to engage in concerted action to cause the injuries, harms, and damages outlined against Mr. Staples and his relationship with DSM.

42.    Due to such wrongful conduct as set forth Mr. Staples has suffered the pecuniary loss of the benefits of his relationship with DSM.

43.    Due to such wrongful conduct Mr. Staples has suffered consequential losses for which the interference is as legal cause.

44.    Due to such wrongful conduct Mr. Staples has suffered mental anguish.

WHEREFORE, PREMISES CONSIDERED, Mr. Staples ask the jury to award him compensatory damages in the jury's discretion to compensate him for his injuries, harms, and damages as aforesaid and for an award of punitive damages in the jury's discretion to punish such Defendants for such wrongful conduct and to deter other similarly situated entities from engaging in such conduct in the future.

## **COUNT FOUR**

### **(Against HWE and/or RMFS and/or Simmons)**

### **Intentional Interference with Business Relationship and Employment of Mrs. Staples as Managing Member of DSM**

45.     Mr. and Mrs. Staples hereby incorporate the foregoing paragraphs 1-44 as if fully set forth herein.

46.     Mrs. Staples had an existing and a prospective constructive right and pecuniary interest in her employment relationship with DSM as Manager and right to be free from interference with her pursuit and/or progress of her trade, profession, and/or business relationship with DSM.  Defendant Simmons Prepared Foods, Inc. knew of Mrs. Staples' employment relationship with DSM as Simmons interacted with Mrs. Staples related to payment of commissions related to the Simmons and/or RMFS and/or HWE relationship.

As referenced in the Affidavit of Mr. Staples with respect to the Simmons and HWE or RMFS relationship, neither party had a sales force with respect to the sale of food products produced or manufactured by Simmons, HWE, and/or RMFS under their relationship.  Instead the parties used a common food product industry custom of using the services of an independent third party food or sales broker.  In this case DSM and its predecessor entities inclusive of Diversified Food Solutions.  Exhibit 11 is an organizational chart believed to have been in the possession and knowledge of Simmons, HWE, and/or RMFS during the Simmons, HWE, and/or RMFS relationship.  The Exhibit indicates that Mrs. Staples was employed with such entity.  Prior to the dissolution of Diversified and the formation

of DSM, Simmons, HWE, and/or RMFS knew that such entity was being paid commissions.

Based on information and belief, Simmons possesses internal documentation reflecting payment of sales commissions to Diversified and DSM and other documentation which indicates the knowledge of Simmons, HWE, and/or RMFS concerning Mrs. Staples's business and employment expectancy within DSM.

Exhibit 12 attached hereto is a letter of Herschel Walker to Todd Simmons of Simmons dated September 24, 2014.  Mr. Walker is informing Mr. Simmons that after a meeting including Mr. Staples, Mr. Walker, and Ron Eisenman of Greenburg Traurig, LLP believed to have occurred at the Atlanta, Georgia office of Greenburg Traurig, HWE and/or RMFS was replacing the third party broker with respect to the Simmons, HWE, and/or RMFS relationship.

Based on information and belief the letter was penned by Mr. Walker in response to an inquiry by Simmons related to the change in third party food brokers.  Based on information and belief, Simmons, HWE, and/or RMFS knew Mrs. Staples worked for and had a business expectancy within the changed food broker another predecessor to DSM. Based on information and belief, Simmons, HWE, and/or RMFS have in their possession numerous documents which relate to their knowledge of Mrs. Staples' business and employment expectancy within the

third party independent food brokers used by Simmons, HWE, and/or RMFS related to their relationship.

47. Defendants Simmons and/or HWE and/or RMFS acting through Walker, Blanchard, and/or agents, servants and/or employees of Simmons affirmatively, intentionally, maliciously, and/or unlawfully interfered with Mrs. Staples' constructive rights as the employed Manager of DSM. Simmons act of interference is related to the withholding of commission payments to DSM which have continued.

48. Such conduct is set out above in paragraphs 20 and 36.

49. Due to such wrongful conduct Mrs. Staples has suffered the pecuniary loss of the benefits of her relationship with DSM.

50. Due to such wrongful conduct Mrs. Staples has suffered consequential losses for which the interference is a legal cause.

51. Due to such wrongful conduct Mrs. Staples has suffered mental anguish.

WHEREFORE, PREMISES CONSIDERED, Mrs. Staples ask the jury to award her compensatory damages in the jury's discretion to compensate her for her injuries, harms, and damages as aforesaid and for an award of punitive damages in the jury's discretion to punish such Defendants for such wrongful conduct and to deter other similarly situated entities from engaging in such conduct in the future.

## COUNT FIVE

### (Against HWE and/or RMFS)

### Breach of Fiduciary Duty

Oppression against Mrs. Staples' DSM Membership Interest

52.    Mr. and Mrs. Staples hereby incorporate the foregoing paragraphs 1-51 as if fully set forth herein.

53.    As a Member of DSM Blanchard in her capacities as Member of DSM and as agent, servant, and/or employee of HWE owed and owes Mrs. Staples a duty to act fairly and fulfill Mrs. Staples' expectations to a proportionate share of the profits of DSM, to secure her livelihood, and to the prospective and ongoing operations of DSM as a lawful business.

54.    As a Member of DSM Blanchard in her capacities as Member of DSM and as agent, servant, and/or employee of HWE owed Mrs. Staples a duty to refrain from the oppressive conduct outlined herein above and to refrain from "squeezing out" Mrs. Staples' interest in DSM and refrain from withholding commissions due and owed by Simmons to DSM.

55.    Due to such wrongful conduct engaged in by Blanchard in her capacities as a Member of DSM and as agent, servant, and employee of HWE Mrs. Staples has suffered injury, harm, and damage to her interest in DSM.

56.     The wrongful conduct engaged in is ongoing and prospective and Mrs. Staples ask this Court to create a Judicial Constructive Trust related to any Simmons' commissions which may be generated by HWE and/or RMFS during the ongoing period of Mrs. Staples' oppression as outlined for the benefit of Mrs. Staples as a Member of DSM.

57.     Due to such wrongful conduct Mrs. Staples has suffered the pecuniary loss of the benefits of her interest in DSM.

58.     Due to such wrongful conduct Mrs. Staples has suffered consequential losses for which the breach of fiduciary duty and oppression is a legal cause.

59.     Due to such wrongful conduct Mr. Staples has suffered mental anguish

WHEREFORE, PREMISES CONSIDERED, Mrs. Staples ask the jury to award her compensatory damages in the jury's discretion to compensate her for hers injuries, harms, and damages as aforesaid, for a constructive trust during the ongoing period of breach of duty and oppression, and for an award of punitive damages in the jury's discretion to punish such Defendants for such wrongful conduct and to deter other similarly situated entities from engaging in such conduct in the future.

## COUNT SIX

### (Against HWE, RMFS, and/or Simmons)

### Civil Conspiracy

60.     Mr. and Mrs. Staples hereby incorporate the foregoing paragraphs 1-59 as if fully set forth herein.

61.     As concerns the conduct referenced in Counts Four and Five Defendants HWE, RMFS, and/or Simmons have conspired among them to engage in concerted action to cause the injuries, harms, and damages outlined by such referenced wrongful conduct against Mrs. Staples and her relationship with DSM.

62.     Due to such wrongful conduct as set forth in Counts Four and Five Mrs. Staples has suffered the pecuniary loss of the benefits of her interest in and relationship with DSM.

63.     Due to such wrongful conduct Mrs. Staples has suffered consequential losses for which the wrongful conduct outlined and referenced in Counts Four and Five are a legal cause.

64.     Due to such wrongful conduct as outlined in such Counts Mrs. Staples has suffered mental anguish.

WHEREFORE, PREMISES CONSIDERED, Mrs. Staples ask the jury to award her compensatory damages in the jury's discretion to compensate her for her injuries, harms, and damages as aforesaid, for a constructive trust for the ongoing period of oppression, and for an award of punitive damages in the jury's discretion to punish such Defendants for such wrongful conduct and to deter other similarly situated entities from engaging in such conduct in the future.

## COUNT SEVEN

### (Against Simmons)

### Wrongful Termination of Mr. Staples
### Implied Contract and Promissory Estoppel under Arkansas Law

65.     Mr. and Mrs. Staples hereby incorporate the foregoing paragraphs 1-64 as if fully set forth herein.

66.     Prior to February 2009, Mr. Staples was employed by Smithfield Foods.   While employed by Smithfield, Mr. Walker of HWE and/or RMFS approached Mr. Staples and asked him to assist him in locating another poultry supplier for HWE and/or RMFS.  Mr. Staples introduced Mr. Walker to Mike Rogers of Tyson Foods who introduced Mr. Walker to Simmons.

67.     In February 2009 Mr. Staples received a phone call from Chip Miller a VP for Simmons.  Mr. Miller asked Mr. Staples if he would be interested in leaving his employment with Smithfield, his and his families' residence in Smithfield, Virginia, and relocating to Arkansas, and going to work for Simmons to "run" the special relationship or venture between Simmons and HWE and/or RMFS.

68.     Subsequent to the above phone call, Simmons made arrangements for and flew Mr. Staples to NorthWest Arkansas Airport.  Mr. Staples met with Mr. Miller at the Simmons' airport hangar in Siloam Springs, Arkansas.

69.     During the meeting Mr. Miller, on behalf of and as agent, servant, and/or employee of Simmons stated, represented, and promised Mr. Staples that in

exchange for Mr. Staples' promise or agreement to leave his employment with Smithfield, relocate to Arkansas, and come to work for Simmons and "run" the special Simmons, HWE, and/or RMFS relationship, Simmons would employ him indefinitely except for good cause.

70.     Based on such statements, representations, and promises, and Mr. Staples' reliance thereupon, Mr. Staples left his employment with Smithfield, relocated himself and his family to Arkansas, to his detriment, and on or about April 2009 became an employee of Simmons to "run" the special Simmons, HWE, and/or RMFS relationship.

71.     Absence the above statements, representations, and/or promises, Mr. Staples would not have left his employment with Smithfield, relocated to Arkansas, and became an employee of Simmons.

72.     On or about December 27, 2017, at the law offices of Greenburg Traurig, LLP, in Atlanta, Georgia, HWE, RMFS, Mr. Walker, and/or Ron Eisenman of Greenburg Traurig, LLP terminated Mr. Staples.

73.     On or about December 27, 2017, or shortly thereafter, Simmons constructively terminated Mr. Staples and demanded return of his Simmons' issued lap top.   Mr. Staples complied.   Mr. Staples' access to his emails and documents pertaining to his employment, the Simmons, HWE, and/or RMFS relationship from April 2009 to the present time are unavailable to him at the present time.

74.     During the time period of April 2009 until Mr. Staples was terminated by Simmons, the Simmons, HWE, and/or RMFS relationship or venture was highly successful and generated significant financial rewards for the benefit of Simmons, HWE, RMFS, and/or Mr. Walker as owner or member of HWE and/or RMFS.

75.     Simmons' termination of Mr. Staples, contrary to Simmons' promises, was without cause.  Exhibit 13 attached hereto reflects that Simmons failed to provide the Arkansas Department of Workforce Services sufficient evidence of any alleged or asserted misconduct on the behalf of Mr. Staples related to his termination.

WHEREFORE, PREMISES CONSIDERED, Mr. Staples ask the jury to award him compensatory damages in the jury's discretion to compensate him for his injuries, harms, and damages as aforesaid, for attorney fees under Ark. Code Section 16-22-308, and for an award of punitive damages in the jury's discretion to punish such Defendant for such wrongful conduct and to deter other similarly situated entities from engaging in such conduct in the future.

## COUNT EIGHT

### (Against Simmons)

**Wrongful Termination of Mr. Staples
For Exercising a Legal Right and/or Refusing to Violate Federal or
State Law and/or Reporting Violations of Federal or State Law
Public Policy Exceptions Under Arkansas Law**

76.     Mr. and Mrs. Staples hereby incorporate the foregoing paragraphs 1-75 as if fully set forth herein.

77.     As stated in paragraph 14, in the Fall of 2017, the Simmons' Controller Carmen Seal questioned Mr. Staples regarding whether or not Simmons was getting involved in the sale of waffle food items concerning the HWE, RMFS, and/or Simmons relationship or venture.

78.     The Controller stated to Mr. Staples that Carol Walker of HWE and/or RMFS had submitted expense invoices to Simmons for Simmons to pay to HWE and/or RMFS for expenses associated in the sale of waffle food items.

79.     While the Controller did not specify if such submissions were sent from the Savanah, Georgia offices of HWE and/or RMFS to the Silom Springs, Arkansas office of Simmons by mail or wire, such submissions implicated the general public policy contained in Federal Mail and Wire Fraud Law.  Such submissions also implicated the general public policy of the State of Arkansas codified in Ark. Code Section 5-36-100 to 5-36-124 related to unlawful taking of property.

80.     Mr. Staples did not aid, abet, or acquiesce and informed the Simmons' Controller not to pay the submitted expenses.  Mr. Staples did not authorize the payment of such expenses and refused to violate in any way any applicable Federal Wire or Mail Statute or State of Arkansas Statute related to unlawful taking of property by any means.

81.     Mr. Staples' refusal to approve such expenses was his exercise of a statutory Federal and/or State right not to violate any Federal or State unlawful taking statute or the general public policy associated with any such laws.

82.     As stated in paragraph 15, in a meeting on or about December 11, 2017, between Mr. Staples and Mr. Jackson President of Simmons, Mr. Staples and Mr. Jackson discussed, among things, the above facts related to the expense submission pertaining to the waffle sales.

83.     Mr. Staples mentioned and discussed the above facts with Mr. Jackson, in part, not only because of his duty of loyalty to Simmons, but also because Mr. Staples exercised a statutory right under Federal and State law not to violate Federal or State law related to the unlawful taking of property; by refusing to violate himself any such Federal or State laws or statutes by authorizing such expense submission; to comply with such Federal or State laws and the general public policy concerning the prevention of unlawful taking of property; and/or for the purpose of reporting potential violations of Federal or State law; all of which are not private concerns but general public Federal and State concerns and policy.

84.     Despite being assured that such disclosures were confidential, based upon information and belief, Mr. Jackson shared such facts and information with Mr. Walker of HWE and/or RMFS.

85.     As stated, on or about December 27, 2017 Mr. Walker and Ron Eisenman of Greenburg Traurig, LLP terminated Mr. Staples in the Atlanta, Georgia office of Greenburg Traurig, LLP.  Simmons subsequently constructively terminated Mr. Staples.

86.     Such constructive termination of Mr. Staples was based on his refusal to violate Federal and/or State criminal statutes related to the unlawful taking of property and refusal to authorize the payment of the submitted waffle food expenses.

87.     Such constructive termination of Mr. Staples was based on Mr. Staples exercising a Federal or State statutory right not to violate Federal and/or State criminal statutes concerning the unlawful taking of property.

88.     Such constructive termination of Mr. Staples was based on Mr. Staples complying not only with Simmons private internal duties of reporting information but also for complying with general public duties related to such reporting.

89.     Such constructive termination of Mr. Staples was in violation of both general Federal and State public policy.

90.     Such constructive termination of Mr. Staples was based on his reporting and discussions with Mr. Jackson of and concerning potential violations of Federal and/or State law.

WHEREFORE, PREMISES CONSIDERED, Mr. Staples ask the jury to award him compensatory damages in the jury's discretion to compensate him for his

injuries, harms, and damages as aforesaid, and for an award of punitive damages in the jury's discretion to punish such Defendant for such wrongful conduct and to deter other similarly situated entities from engaging in such conduct in the future.

## COUNT NINE

### (Against HWE, RMFS, and/or Simmons)

### Wrongful Termination
### Civil Conspiracy

91.    Mr. and Mrs. Staples hereby incorporate the foregoing paragraphs 1-90 as if fully set forth herein.

92.    As concerns the conduct referenced in Counts Seven and Eight Defendants HWE, RMFS, and/or Simmons have conspired among them to engage in concerted action to cause the injuries, harms, and damages outlined by such referenced wrongful conduct against Mr. Staples and his relationship with Simmons.

93.    Due to such wrongful conduct as set forth in Counts Seven and Eight Mr. Staples has suffered the pecuniary loss of the benefits of his employment and relationship with Simmons.

94.    Due to such wrongful conduct Mr. Staples has suffered consequential losses for which the wrongful conduct outlined and referenced in such Counts are a legal cause.

95.    Due to such wrongful conduct as outlined in such Counts Mr. Staples has suffered mental anguish.

WHEREFORE, PREMISES CONSIDERED, Mr. Staples ask the jury to award him compensatory damages in the jury's discretion to compensate him for his injuries, harms, and damages as aforesaid, and for an award of punitive damages in the jury's discretion to punish such Defendants for such wrongful conduct and to deter other similarly situated entities from engaging in such conduct in the future.

## COUNT TEN

### (Against HWE and/or RMFS)

### DEFEMATION

96.     Mr. Staples incorporates all of the material allegations of the Original, First, and Second Complaints and Amended Complaints herein by reference.

97.     Subsequent to the filing of the Original Complaint and based upon information and belief during the month of March 2018, Mr. Walker, as owner, member, agent, servant, and/or employee of HWE and/or RMFS engaged in communications with third parties inclusive of representatives, agents, servants, and/or employees of an entity known as Radian and stated to such parties that Mr. Staples, along with other third persons not parties to these proceedings, had conspired to steal his company.  Additionally, that Mr. Staples had stolen from him and/or his company.

98.     Subsequent to the filing of the Original Complaint, Mr. Walker, as owner, member, agent, servant, and/or employee of HWE and/or RMFS also

engaged in communications with representatives, agents, servants, and/or employees of Schutt Helmets and stated to such persons or entity that Mr. Staples operated a secret collections (Football Helmets) company and expensed the costs and expenses to RMFS.

99.   Such published statements are untrue.  Such published statements are similar to statements made by Mr. Walker of and concerning the person who managed the Simmons, HWE, and/or RMFS relationship (Mike Rogers) prior to Mr. Staples being hired by Simmons.  Such statements are similar to conduct described by Mr. Walker in his Book "Breaking Free".

100. Such published statements were made negligently, recklessly, wantonly, willfully, and/or intentionally of false and defamatory statements of and concerning Mr. Staples.  By way of example, Mr. Staples often obtained and provided Helmets to agents, servants, and/or employees of Simmons and customers of Simmons, HWE, and/or RMFS based upon their request for such items.   Such activities were approved by Mr. Walker, Mr. Eisenman, Greenburg Traurig, LLP, and/or Simmons as was the expensing of such promotional items related to the Simmons, HWE, and/or RMFS relationship/venture.

101.  Such published statement were made so to cause harm to the reputation of Mr. Staples in his home community of Tuscaloosa, AL, mental anguish to Mr. Staples, as well as to cause interference with his prospective business relationships in the food industry of which he has been employed, as well as his efforts to earn a livelihood and support his family subsequent to his termination made the basis of this case.

102.  Such published statements were made so to lower Mr. Staples in the estimation of the business community or to deter third parties from associating with him.

103.  Such published statements constitute defamation per se as they imply the offense of stealing.

104.  Such published statements were made so to bring Mr. Staples into public or business community hatred, contempt, ridicule, and/or shame.

105.  As a legal and proximate result of the published defamatory statements Mr. Staples has been harmed by damage to his reputation and prospective business relationships.   Under Alabama law such damages are presumed as a matter of law due the nature of the statement made and published.

106.  Mr. Staples has suffered mental anguish damages under Alabama law.

Wherefore, Mr. Staples ask the jury to award him compensatory damages to compensate him for the harms and injuries he has sustained and against HWE and/or RMFS.  Mr. Staples ask the jury to award him punitive damages to punish HWE and/or RMFS and to deter others from engaging in similar wrongful conduct now and in the future and to prevent similar wrongs.

## COUNT ELEVEN

### Against HWE and/or RMFS)

### TORTIOUS INTERFERENCE

106.   Mr. Staples incorporates the foregoing material allegations as if set forth in full.

107.   The defamatory, disparaging, or derogatory statements made by Mr. Walker referenced herein above were made so to cause interference with Mr. Staples' business relationships and his ability to earn a living subsequent to his termination made the basis of this case.

108.   Mr. Walker knew of the relationships and because of his knowledge of such relationships contacted said third parties of and concerning Mr. Staples.

109.   The disparaging statements were made intentionally to cause interference with Mr. Staples' relationships and ability to earn a living post termination made the basis of this case.

110.    As a legal and proximate result of the interference Mr. Staples has been harmed and suffered damages and injuries as alleged and set out herein.

Wherefore, Mr. Staples ask the jury to award him compensatory damages to compensate him for the harms and injuries he has sustained and against HWE and/or RMFS.  Mr. Staples ask the jury to award him punitive damages to punish HWE and/or RMFS and to deter others from engaging in similar wrongful conduct now and in the future and to prevent similar wrongs.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. and Mrs. Staples demand judgment as follows:

i.    Against all the Defendants and in their favor for the amount of damages sustained by them as a result of the Defendants' interference, conspiracy to interfere, breach of fiduciary duties, conspiracy to breach fiduciary duties, oppression, conspiracy to oppress, wrongful termination, and/or defamation.

ii.    Awarding to Mrs. Staples a constructive trust and ordering disgorgement of all commissions owed by Simmons to DSM and all future commissions which Simmons may pay to HWE and/or RMFS during the ongoing period of oppression as against Mrs. Staples due to the wrongful conduct engaged in and as outlined by Defendants herein;

iii.     Award to Mr. Staples and Mrs. Staples the costs and expenses of this action, including reasonable attorney fees, accountants fees, and experts' fees, costs and expenses;

iv.     Compensatory and/or punitive damages in such sum as the jury may in their discretion award based upon the wrongdoing alleged in this Amended Complaint;  and

v.     Granting such other and further relief as the Court deems just and proper.

## **<u>JURY DEMAND</u>**

Mr. and Mrs. Staples demand trial by struck jury.

Respectfully submitted,

<u>/S/ Keri Donald Simms (ASB-9801-63K)(SIM042)</u>
Attorney for Mr. and Mrs. Staples
Webster Henry Firm, P.C.
Suite 445 East
Two Perimeter Park South
Birmingham, Alabama 35243
Direct Dial: (205) 518-8968
Phone: (205) 380-3480 ext. 351
Facsimile: (205) 380-3485
Email: Ksimms@websterhenry.com

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on the date and time affixed to this document by the Court Electronic Filing System that I have caused to be filed the foregoing document which system will send a copy of and notification of this document to all counsel of record for all parties to these proceedings and that there are no pro se parties for which separate U.S. Mail notification is required.


/S/  Keri Donald Simms (ASB-9801-63K)(SIM042)
OF COUNSEL